# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Contreras & Metelska, P.A.,<br><br>                    Plaintiff,<br><br>v.<br><br>United States Department of Justice,<br>and Executive Office for Immigration<br>Review,<br><br>                    Defendants. | Case No. 20-cv-1261 (SRN/KMM)<br><br><br>**ORDER** |

Nicholas Ratkowski, Contreras & Metelska, P.A., 200 University Ave. W., Ste. 200, St. Paul, MN 55103, for Plaintiff

Ann Bildtsen, United States Attorney's Office, 300 S. 4 St., Ste. 600, Minneapolis, MN 55415, for Defendants

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion for Attorney's Fees and Costs [Doc. No. 10] filed by Plaintiff Contreras & Metelska, P.A. This matter was submitted to the Court on the papers, without oral argument. For the reasons set forth below, the Court denies Plaintiff's motion.

## I.    BACKGROUND

### A.  Plaintiff's Request Under the Freedom of Information Act

On December 12, 2019, Nico Ratkowski, an attorney at the law firm Contreras & Metelska, P.A., as well as counsel for Plaintiff, submitted a request to the Executive Office of Immigration Review ("EOIR") pursuant to the Freedom of Information Act ("FOIA.")

(Pl.'s Ex. 1 [Doc. No. 15-1]).)  The EOIR is a sub-agency within the Department of Justice ("DOJ"), and is responsible for enforcing the anti-discrimination provisions of immigration law, and functions independently of the immigration enforcement functions of DHS. (Schaaf Decl. [Doc. No. 18] ₱ 2.)  Under delegated authority from the Attorney General, EOIR "interprets and administers federal immigration laws by conducting immigration court proceedings, appellate reviews, and administrative hearings."  (*Id*. ₱ 3.)  Plaintiff Contreras & Metelska is an immigration law firm in St. Paul, Minnesota.  (Compl. ₱ 6.)

Ratkowski had seen an announcement from the American Immigration Lawyers Association ("AILA") about a new DHS computer scheduling system for immigration hearings ("DHS Portal").  (*See* Pl.'s Ex. 1.)  The information published by AILA included guidance given to EOIR staff regarding the phase-out of its current scheduling system, "CASE-ISS," and stated,

> WHAT CASE-ISS USERS NEED TO KNOW:
>
> • CASE-ISS is being phased out by August 2019
>
> • Registered CASE-ISS user accounts and passwords will be automatically transferred to the DHS Portal
>
> • Single sign-on for ICE personnel (due to *EOIR-ICE federation agreement*)

(*Id.*)  (emphasis added).

In Ratkowski's December 12, 2019 FOIA request to EOIR, sent via email, he requested a copy of the EOIR-ICE federation agreement, on behalf of Plaintiff Contreras & Metelska.  (*Id.* at 1–2.)

The following day, EOIR sent Plaintiff an acknowledgement letter, assigning the FOIA request to its "complex track."  (Pl.'s Ex. 2 [Doc. No. 15-2].)

## B.  Executive Office of Immigration Review's General Practices With Respect to FOIA Requests

Joseph R. Schaaf, Supervisory Attorney Advisor under the Office of the General Counsel at EOIR, oversees the FOIA Unit.  (Schaaf Decl. ⁋ 5.)  In a declaration submitted in response to Plaintiff's motion, Schaaf states that in Fiscal Year 2019, EOIR's FOIA program processed 48,617 requests, the majority of which were first-party requests from aliens or their legal representatives, requesting their Record of Proceedings ("ROP") before the immigration courts.  (*Id.* ⁋ 7.)  Schaaf states that such requests do not typically require attorney involvement, and are considered Track 2 "Simple" requests.  (*Id.*)  The average processing time for Track 2 Simple ROP requests in 2019 was 52 days.  (*Id.*)  Schaaf explains that when a FOIA request arrives at EOIR's FOIA Service Center, intake personnel make a determination as to whether the request seeks an ROP, in which case it is designated as Simple (Track 2), or other agency records, in which case it is initially designated as Complex (Track 3).[1]  (*Id.* ⁋ 8.)

After intake staff designate the appropriate FOIA processing track, they send an acknowledgement letter to the requesting party.  (*Id.* ⁋ 9.)  While the processing of Simple requests generally remains within the FOIA Service Center, all Complex requests are forwarded to Schaaf, as the Supervisory Attorney Advisor.  (*Id.*)  Schaaf states that all

---

[1]     In addition, Schaaf notes that if a request qualifies for expedited treatment under statutory authority (not applicable here), EOIR personnel may designate it as Expedited (Track 1), and give it priority over other requests. (Schaaf Decl. ⁋ 8.)

Complex requests generally remain with the "Complex Team" of attorneys and supporting staff for the life of the request. (*Id.*) In Fiscal Year 2019, Schaaf notes that the average processing time for Track 3 Complex requests was 46 days. (*Id.*)

The processing time for Complex (Track 3) requests varies widely depending on several factors, including the following: "(1) the scope of the request; (2) the number of agency program offices (including field offices) likely to have responsive documents within the scope of the request that will be tasked to conduct a search; (3) the volume of potentially responsive records for review; (4) the sensitivity of records responsive to a request requiring multiple layers of review; (5) coordination with other agency components or other agencies for records in which these components or agencies have an equity interest (so-called Consultations and Referrals); (6) the FOIA pending request log; and (7) agency personnel and staffing." (*Id.* ⁋ 10.)

With respect to a Complex request, Schaaf states that staff first identify the program offices within EOIR that are most likely to possess responsive records, and to identify FOIA points of contact within the program offices, to whom a copy of the FOIA request is transmitted. (*Id.* ⁋ 11.) The FOIA points of contact then transmit the request to individual employees or offices that are most likely to have responsive documents. (*Id.*) Employees and offices search for records and provide the records to their program office's points of contact, who then provide the records to one of the two FOIA Unit Attorney Advisors (including Schaaf) who manage Complex (Track 3) requests. (*Id.* ⁋ 12.)

Schaaf states that the Attorney Advisor then takes one of two approaches, based on the types of records requested. (*Id.*) Under the first approach, the Attorney Advisor

reviews the records for any applicable FOIA exemptions, and redacts any exempt information, as applicable. (*Id.* ⁋ 13.) Under the second approach, the Attorney Advisor may delegate a voluminous records project to a government information professional, specialized contractor, or, less frequently, to an attorney within the Office of the General Counsel who is not part of the FOIA Unit. (*Id.* ⁋ 14.) Schaaf states that this approach is typically used if the Attorney Advisor concludes that the responsive records are similar in nature, that one or two FOIA exemptions apply to certain exempt information within the records, and the responsive records are voluminous. (*Id.*)

### C. EOIR's Processing of Plaintiff's FOIA Request

Schaaf reviewed Plaintiff's FOIA request filed on December 12, 2019. (*Id.* ⁋ 15.) He states that at the time, EOIR had a backlog of approximately 10,976 FOIA requests, and received 4,103 requests in December alone. (*Id.* ⁋ 16.) In the December 13, 2019 acknowledgement letter sent to Plaintiff, EOIR advised that because Plaintiff's request involved "unusual circumstances" due to the possible need to consult with a field office, this could result in increased processing time from 20 to 30 business days. (*Id.* ⁋ 17 & Schaaf Ex. B.) The acknowledgement letter further offered the assistance of the agency's FOIA Public Liaison and the mediation services of the Office of Government Information.

On December 13, 2019, Schaaf received Plaintiff's FOIA request. (*Id.* ⁋ 18.) He explains that it was not a Simple ROP request, but would instead require coordination with outside agencies such as ICE, and was therefore designated as Complex (Track 3). (*Id.*) On December 17, 2019, Schaaf asked a program office—EOIR's Office of Information Technology—to provide a copy of the requested agreement. (*Id.* ⁋ 19.) Because of the

inter-agency nature of the agreement, Schaaf anticipated that the FOIA request would require consultation with ICE.  (*Id.*)

On December 19, 2019, EOIR's Office of Information Technology provided Schaaf a copy of the requested agreement.  (*Id.* ¶ 20.)  Given the title of the agreement, "Interconnection Security Agreement between Justice Management Division and . . . ICE," Schaaf knew that the document did not originate from EOIR, but from the Justice Management Division ("JMD") of the Department of Justice.  (*Id.*)  The JMD is the principal unit responsible for management and administrative support in DOJ.  (Allen Decl. [Doc. No. 19] ¶ 1.)  Schaaf states that it is not uncommon to locate responsive FOIA records that originate from another agency.  (Schaaf Decl. ¶ 21.)  In such situations, Schaaf states, "[t]he long-standing practice . . . is to either *refer* the requested record to the originating agency or component for it to process, or to *consult* with the other agency or component . . . to get its views on the sensitivity of the document's content prior to making a disclosure determination."  (*Id.*)  Schaaf asserts that typically, agencies refer requested records for direct handling if the records originated with the other agency.  (*Id.*)  However, for records that originate within the agency processing the request and contain information of interest to another agency, the agency processing the request typically consults with the other agency prior to making a release determination.  (*Id.*)

Within 30 days of receiving Plaintiff's FOIA request, on January 14, 2020, EOIR referred the requested document to JMD for processing and a direct response to Plaintiff. (*Id.* ¶ 22.)  That same day, Schaaf wrote EOIR's final response letter to Plaintiff, stating

6

that the document had been located, and was referred to JMD for a direct response.  (*Id.* & Schaaf Ex. D.)  EOIR then closed Plaintiff's request on January 14, 2020.  (*Id.* ¶ 22)

On May 27, 2020, Plaintiff contacted EOIR to inquire about the January 14, 2020 decision letter.  (*Id.* ¶ 23.)  On May 28, 2020, Schaaf personally responded to the inquiry and reiterated that EOIR had referred the document to JMD for a direct response to Plaintiff.  (*Id.* & Schaaf Ex. E.)

### D.  Justice Management Division's Processing of Plaintiff's FOIA Request

Michael H. Allen is the Deputy Assistant Attorney General for Policy, Management and Planning in JMD.  (Allen Decl. ¶ 1.)  Again, JMD is responsible for management and administrative support in DOJ, which includes fiscal responsibility, human resources management, information resources and management policy, and management and planning.  (*Id.*)  Allen oversees JMD staff who process FOIA requests and apply FOIA exemptions to those requests.  (*Id.* ¶ 2.)

Allen states that JMD does not have a dedicated FOIA Office; rather, FOIA processing duties are shared among JMD staff.  (*Id.* ¶ 5.)  In addition to receiving hard copy requests, Allen asserts that the JMD FOIA email inbox typically receives over 2,000 emails a month, which include FOIA requests and FOIA status requests. (*Id.*)  The JMD's FOIA process consists of three parts:  (1) staff in JMD's front office first reviews, assigns, and tracks requests; (2) JMD program staff assigned to FOIA requests conduct searches and perform initial reviews, consider the sensitivity of the requested records, and propose redactions based on applicable FOIA exemptions; and (3) employees in the Office of the General Counsel conduct a legal review of the proposed response, assessing whether the

FOIA exemptions are appropriate by seeking additional information from program offices, and identifying other agencies for consultation prior to the release of the records. (*Id.* ¶¶ 5–7.)

JMD received Plaintiff's FOIA request on January 14, 2020. (*Id.* ¶ 8.) On January 31, 2020, JMD assigned the request to the Office of the Chief Information Officer, and sent Plaintiff an acknowledgement letter. (*Id.* & Allen Ex. A.) Allen asserts that due, in part, to extra duties assumed by the person responsible for JMD's FOIA requests due to a staff vacancy and a large number of emails in JMD's FOIA mailbox, there was a delay of 12 working days. (*Id.* ¶ 8.) In January 2020, JMD received 2,554 emails in its FOIA mailbox. (*Id.*)

At the time JMD received Plaintiff's request, Allen asserts that JMD was working through a significant backlog, which contributed to the delay in processing Plaintiff's request. (*Id.* ¶ 9.) On January 1, 2020, JMD had approximately 163 open FOIA requests, of which 144 were backlogged. (*Id.*)

In February 2020, the Office of the Chief Information Officer's FOIA coordinator sent Plaintiff's FOIA request to its Cyber Security Services Office for processing. (*Id.* ¶ 10.) Allen states that the responsive document—the Interconnection Security Agreement between JMD and ICE—"documents the requirements and security mechanisms safeguarding the interconnection between DOJ['s] JMD and ICE for the transfer, receipt, or exchange of information." (*Id.*) Among other things, the Interconnection Security Agreement provides for a secure interconnection through DOJ Federation Services, an information technology system managed by JMD. (*Id.*) This interconnection provides

8

single sign-on and authentication services to DOJ applications and allows DOJ to authenticate the identities of ICE users. (*Id.*) Allen states that the Interconnection Security Agreement "governs the security requirements and authentication mechanisms relating to the interconnection." (*Id.*)

Allen asserts that the Cyber Security Services Office assigned a subject matter expert to review the document "to ensure that the DOJ network and systems would not be compromised by public release of the information." (*Id.* ⁋ 11.) The subject matter expert identified concerns regarding the disclosure of diagrams and other detailed information about the JMD system that could make JMD vulnerable to cyber-attack. (*Id.*) At the time, the Cyber Security Services Office was also managing a secure transition to maximum telework due to the evolving COVID-19 pandemic. (*Id.*) Nonetheless, Allen states that the Cyber Security Services Office was able to make proposed redactions to the document, obtain management review, and send the response to the Office of the General Counsel for legal review on March 30, 2020. (*Id.*)

Due to the COVID-19 pandemic and resulting increase in telework at DOJ in March 2020, JMD made operational changes to the FOIA process, which included conducting searches remotely, digitizing signatures, and sending hard copy responses through the Mail Referral Unit when no email address was available. (*Id.* ⁋ 12.) Allen states that during March and April, "JMD['s] [Office of the General Counsel] experienced an increase in high-priority non-FOIA work related to reviews of policy changes and other matters required by the COVID-19 emergency." (*Id.*) As a result, he contends, there were delays in processing FOIA requests. (*Id.*)

Allen notes that on May 5, 2020, JMD's Office of the General Counsel requested additional information from the Office of the Chief Information Officer to assess the applicability of certain FOIA exemptions. (*Id.* ¶ 13.) After it reviewed the additional information, JMD's Office of the General Counsel made changes to the Office of the Chief Information Officer's proposed redactions. (*Id.*) In addition, the Office of the General Counsel also concluded that consultation with ICE was required since the Interconnection Security Agreement was between JMD and ICE. (*Id.*)

On May 21, 2020, Ratkowski responded to DOJ's January 31, 2020 email in which it had acknowledged receiving the referral from EOIR. (Pl.'s Ex. 5 [Doc. No. 15-5].) Ratkowski stated, "I am curious why it is taking so long for you to release the requested documents. EOIR's response to my FOIA [request] (attached) indicates that they were able to find the documents in less than a month. The document I'm asking for is easy to find and readily available. Why was my request deemed complex, and why has the material not been turned over yet? This appears to be an unlawful delay." (*Id.*)

On May 26, 2020, the Office of the Chief Information Officer told the JMD's FOIA contact that the FOIA response was undergoing review in JMD's Office of the General Counsel. (Allen Decl. ¶ 15.) On May 27, 2020, Plaintiff filed the instant lawsuit, asserting claims against EOIR and DOJ for violation of the FOIA for their failure to respond within the required time, and a claim against EOIR for inadequate justification for withholding information. (Compl. [Doc. No. 1] ¶¶ 26–45.) That same day, JMD's Office of the General Counsel contacted ICE, seeking its review of JMD's proposed release of the document with its proposed redactions. (Allen Decl. ¶ 14 & Allen Ex. B.) Allen states that JMD

10

does not send consult requests out until JMD has made initial determinations regarding exemptions. (*Id*. ⁋ 14.) At the time it sent the consultation email to ICE, Allen states that JMD's Office of the General Counsel was unaware of the filing of this lawsuit. (*Id.*)

On May 28, 2020, the JMD FOIA contact emailed Ratkowski, stating, "The response for your request is under final review within our Office of General Counsel and should be completed soon. I apologize for the delay but due to the necessary operational changes as a result of the national emergency concerning the COIVD-19 outbreak there has been some delay in the processing of your request." (Allen Decl. ⁋ 15 & Allen Ex. A.) Allen states that because the Office of the General Counsel had sent the consultation email to ICE on May 27, 2020, the Office of the Chief Information Officer was unaware of the ICE consultation when it updated the JMD FOIA contact on May 26, 2020. (*Id.* ⁋ 15.)

On May 28, 2020, Ratkowski informed the JMD FOIA contact that Plaintiff had filed suit the previous day regarding the FOIA request. (*Id.* ⁋ 16 & Allen Ex. A.) Allen states that this was JMD's first notice of the lawsuit. (*Id.* ⁋ 16.) On June 2, 2020, the JMD FOIA contact emailed Ratkowski, providing additional information about the pending consultation with ICE, the subject matter of the responsive document, and the fact that the document contained certain information that would be withheld for security reasons. (*Id.* ⁋ 17 & Allen Ex. C.)

JMD received a response from ICE on June 10, 2020. (*Id.* ⁋ 18.) Based on JMD's review of the document and the recommendations it had received during the consultation process, it found that "some limited information could be withheld as exempt from disclosure" under certain FOIA exemptions. (*Id.*) On June 12, 2020, JMD responded to

11

Plaintiff's FOIA request by providing a redacted copy of the requested agreement, along with an explanation of the applicable FOIA exemptions.  (*Id.* & Allen Exs. D & E.)

### E.  Resolution of Lawsuit and Plaintiff's Motion

After Plaintiff received the requested information from JMD, the parties here stipulated to the dismissal of this action, with prejudice.  (Joint Stip. [Doc. No. 6].) However, they agreed that the Court could retain jurisdiction to consider Plaintiff's contemplated motion for attorney's fees and litigation costs under a provision of the FOIA. (*Id.*)  On June 29, 2020, the Court dismissed this matter with prejudice, and the Clerk of Court entered Judgment.  (*See* June 29, 2020 Order & J. [Doc. Nos. 8 & 9].)

On July 7, 2020, Plaintiff filed the instant motion for attorney's fees and litigation costs under the FOIA, 5 U.S.C. § 552(a)(4)(E)(II). Plaintiff contends that Defendants unlawfully delayed in making a determination about Plaintiff's FOIA request, and seeks $7,480 in attorney's fees, and $419.80 in litigation costs.  (Pl.'s Mem. [Doc. No. 11] at 1.) Defendants oppose the motion.  (Def.'s Opp'n [Doc. No. 17] at 2.)

## II.   DISCUSSION

The FOIA contemplates that upon receiving requests for records, within 20 days, agencies will make determinations about whether to comply with the requests, and shall immediately notify the requesting party of the agency's determination and its reasons.  5 U.S.C. § 552(a)(6)(A).  In general, the 20-day period may be increased by 10 working days if the agency notifies the requesting party that the request involves "unusual circumstances."  5 U.S.C. § 552(a)(6)(B).

Also under the FOIA, a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). In order to have "substantially prevailed," a complainant must have obtained relief through either: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(i)(I)-(II). Under the second provision, sometimes referred to as the "catalyst theory," a plaintiff has substantially prevailed if it is able to "(1) prove eligibility by showing that the lawsuit was reasonably necessary and the litigation substantially caused the release of the requested records; and (2) prove that [it] was entitled to fees under four factors that the court weighs in determining whether attorneys' fees are appropriate." *Consumers Council of Mo. v. Dep't of Health*, No. 4:14CV1682 JCH, 2015 WL 4876150, at *3 (E.D. Mo. Aug. 14, 2015) (citing *Deininger & Wingfield, P.A. v. IRS*, No. 4:08CV00500 JLH, 2009 WL 2241569, at *3 (E.D. Ark. 2009) (citations omitted).[2] The complainant bears the burden of establishing that it substantially prevailed. *Ginter v. IRS*, 648 F.2d 469, 471 (8th Cir. 1981).

---

[2] The four factors are: "(1) the benefit to the public to be derived from the case; (2) commercial benefit to the complainant; (3) the nature of the complainant's interest in the records which he seeks; and (4) whether the government's withholding of the records had a reasonable basis in law." *Consumers Council of Mo.*, 2015 WL 4876150, at *3 n.4 (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389 (8th Cir.1985) (citation omitted)).

Plaintiff claims eligibility for attorney's fees under the catalyst theory, arguing that Defendants "voluntarily or unilaterally changed position as a result of Plaintiff's commencement of litigation." (Pl.'s Mem. at 14.) Plaintiff contends that it took the commencement of this lawsuit for Defendants to provide the requested document, noting that only 16 calendar days elapsed from the filing of the lawsuit until DOJ responded to the FOIA request, as compared to 167 calendar days that elapsed between Defendants' receipt of the FOIA request and the filing of this lawsuit. (*Id.* at 15.) Moreover, given that Plaintiff's request was referred to ICE at the end of the review process, Plaintiff surmises that this lawsuit served as the catalyst for the document's production because "ICE has a reputation for consistently exceeding statutory timelines in response to FOIA requests, particularly when those requests stem from referrals from other agencies." (*Id.*) Thus, but for the filing of this lawsuit, Plaintiff argues, "ICE would not have responded so hastily." (*Id.*)

Plaintiff also disputes DOJ's explanation that operational changes necessitated by the COVID-19 pandemic were responsible for some of the delay, noting that at least 45 days passed between DOJ's January 31, 2020 email to Ratkowski, acknowledging the FOIA request, and March 16, 2020, when DOJ's website documented its earliest actions in response to the COVID-19 pandemic. (*Id.* at 17–18.)

In addition, Plaintiff also finds relevant "for purposes of exposing the pretextual justification for delay provided by the DOJ" the fact that the requested document was only 13 pages long and contained only 12 redactions. (*Id.* at 19.) Plaintiff contends that a single

employee could have redacted the document in thirty minutes "without referring it to anyone." (*Id.*)

The Court finds the catalyst theory is inapplicable here, as Plaintiff has not shown that Defendants voluntarily or unilaterally changed their position in response to this lawsuit. In other words, Plaintiff has not shown that the filing of this lawsuit caused Defendants to provide the requested information. Against Plaintiff's speculation based largely on timing, Defendants have submitted evidence showing the complicated review process that this FOIA request required. A number of factors contributed to the delay in processing Plaintiff's FOIA request, including unexpected work caused by the COVID-19 pandemic and a transition to telework, the sensitive nature of certain information in the requested document, the need for inter-agency review, and a general backlog of FOIA requests. *See Deininger & Wingfield*, 2009 WL 2241569, at *3 (noting that courts must consider "the demands of the search, the agency's backlog of FOIA requests, and the plaintiff's attempts to resolve the issue out of court."). During the pendency of Plaintiff's request, Defendants informed it about the status of its request and gave it no reason to believe that the request would be denied. On December 13, 2019 and January 14, 2020, EOIR communicated with Plaintiff, and on January 31, 2020, JMD informed Plaintiff that it was processing the request, which EOIR had referred to JMD. (Schaaf Decl. ⁋⁋ 17, 22 & Schaaf Exs. B, D; Allen Decl. ⁋ 8 & Allen Ex. A.) On May 28, 2020, before JMD knew about the lawsuit, it corresponded with Ratkowski, stating that the processing of Plaintiff's request was nearly complete. (Allen Decl. ⁋ 15 & Allen Ex. A at 1.)

In *Ginter*, the Eighth Circuit considered a district court's denial of a similar request for attorney's fees following a FOIA request. 648 F.2d at 473. The court found that a six-month delay in responding to a FOIA request did not require the filing of a lawsuit in order to obtain the requested information:

> Here, the IRS was unable to locate the information and was conducting a special search when appellant filed suit. Up until this time the IRS had not informed appellant that the requested material would not be produced. Under these circumstances appellant's suit was premature and thus not reasonably necessary. There was no indication that the government had not been acting in good faith. In fact only six months had passed since the initial request, which was broad and vague. Only five months had passed since appellant's second request and the government had informed him of the difficulties in obtaining this information only one month prior to the filing of the suit.

*Id.* The delay of "only six months" in *Ginter* is the same as the delay here, with Plaintiff making its request on December 12, 2019, and receiving the document on June 12, 2020.

Other courts have likewise declined to award attorney's fees where there is no indication that the lawsuit caused the agency to provide the requested information. *See, e.g., Consumers Council of Mo.*, 2015 WL 4876150, at *4 (finding plaintiff's lawsuit was prematurely filed, as the agency was in the process of complying with its obligation to provide the requested information, and therefore, the plaintiff was not eligible for an award of attorney's fees); *Gahagan v. U.S. Citizenship and Immigration Servs.*, No. 14-1268, 2014 WL 4930479, at *2 (E.D. La. Oct. 1, 2014) ("It is not enough to merely allege that because the documents were divulged after a lawsuit was filed, said information was released as a result of that suit.").

Also, as in *Ginter*, there is no indication here that Defendants notified Plaintiff pre-suit that they did not have the requested information or refused to provide it, and then

reversed course after the lawsuit was filed.  In short, Defendants did not change their position in response to the lawsuit.

On its own, the timing of the filing of a lawsuit and the subsequent release of the requested information is "insufficient to establish causation." *Codrea v. ATF*, 272 F. Supp. 3d 49, 53 (D.D.C. 2017) (citation omitted).  While relevant, timing alone does not show that Plaintiff substantially prevailed in its lawsuit. *Lovell v. Alderete*, 630 F.2d 428, 431 (5th Cir. 1980) ("The mere fact that the information sought was not released until after the suit was instituted without more is insufficient to establish that [plaintiff] substantially prevailed in either of his suits."); *Simon v. Fed. Bureau of Prisons*, No. 16-cv-704 (ADM/KMM), 2016 WL 5109543, at *6 (D. Minn. Aug. 29, 2016) ("The timing of the BOP's production, after Mr. Simon filed suit, is certainly relevant to the question of causation, but that timing alone is not enough to establish that the litigation caused the release of information."), *adopted*, 2016 WL 5219582 (D. Minn. Sept. 20, 2016).

Under the circumstances here, while Defendants provided the responsive document after the filing of this lawsuit, that fact alone fails to show that Plaintiff's lawsuit substantially caused Defendants to provide the document. *Ginter*, 648 F.2d at 473.  While Plaintiff speculates about ICE's "hasty" response once litigation commenced, and the timing of DOJ's workplace response to the COVID-19 pandemic, by every indication, Defendants were diligently attempting to respond to Plaintiff's request, under challenging circumstances.  During a significant portion of the six-month processing period, the global pandemic caused JMD and EOIR to experience disruptions to the type and location of their work.  In addition, Defendants faced FOIA backlogs, including requests that preceded

17

Plaintiff's request.  Nonetheless, they communicated with Plaintiff and apprised it of their efforts.  Because the document in question was an agreement between two agencies, the FOIA response required the input of more than one agency. Furthermore, the document contained sensitive information that required careful review.  Given all of these circumstances, the Court finds that Plaintiff has not shown that this lawsuit was reasonably necessary to obtain the information, and that the litigation substantially caused the production of the requested information.  *Ginter*, 648 F.2d at 473.  Accordingly, Plaintiff has failed to show that it "substantially prevailed," and is therefore ineligible for attorney's fees under the FOIA.

## III.   ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Attorney's Fees and Costs [Doc. No. 10] is **DENIED**.


Dated:  November 23, 2020                          s/Susan Richard Nelson
                                                   SUSAN RICHARD NELSON
                                                   United States District Judge